The last case of the day is Goplin v. WeConnect. Mr. Townsend for the appellate. Good afternoon. If it pleases the court, my name is Ross Townsend. My firm and I appear today on behalf of our client, WeConnect, Inc. In November of 2017, our client filed a motion to dismiss the claims filed by the plaintiff appellee, Mr. Goplin. The basis for our motion was that Mr. Goplin had earlier signed an agreement under which he agreed to arbitrate all disputes that he had with his employer. Now, we acknowledge that when he signed that document, the name on the document that identified the employer was the name Alternative Entertainment, Inc., also known as AEI. On that basis, on December 28, the court denied the motion to dismiss and held that because the defendant appellant, WeConnect, the name nowhere appeared in the arbitration agreement, that WeConnect could not enforce the provisions of the arbitration agreement against Mr. Goplin. Did WeConnect or AEI ever sign the contract? No, sir. No, Your Honor. So is there a contract here? Yes, Your Honor. We believe there is. Under controlling law, WeConnect slash AEI, which is the point we'll get to in a minute, offered, drafted and offered the agreement to Mr. Goplin. He signed the document and gave it back. There was clearly a meeting of the minds. There was no questions or attempts by Mr. Goplin to amend or counteroffer. So there was an offer and there was an offense. I assumed that the person who gave him the piece of paper would have signed it, but they never did. They never did, but the signature is not essential to its enforceability. What's essential is a meeting of the minds. The company offered a document, made an offer, expressed in the document. A company that no longer existed, apparently. Well, no, Your Honor, I'm sorry, but you're wrong about that. In fact, the company still exists to this very day and, in fact, is my client, WeConnect, Inc. But, counsel, so on that point, why on earth didn't you just introduce those corporate documents before the judge ruled the first time? Because the affidavit from the HR, I mean, the district judge is right. I mean, the affidavit from the HR person is really not, doesn't help you very much. But you could have filed those, given the corporate documents. Absolutely. And had we known that the district court judge was going to reach into the website, pull language out of the website, craft an argument, put it in the order on December 28th, that's absolutely what we would have done. But, of course, we weren't prescient. That was the obvious thing to do right at the moment. And now you're precluded from introducing them because it's not new evidence. It's not newly discovered. It's not evidence you couldn't have introduced before. Your Honor, if you read the brief filed by the plaintiff appellant in opposition to our motion to dismiss, they make five casual remarks that talk about the relationship between AEI and WeConnect. They state repeatedly that the name WeConnect never appears in the arbitration agreement. But that doesn't mean anything. That is irrelevant because we now know that the name WeConnect is... It's not irrelevant. Well, it is unless they develop the argument. They never developed the argument. There was no citations. There was no case law. There was no statute. They pointed to the website, which showed by the website, and that's not a judicial notice problem. With all due respect, Your Honor, they put the citation of the website in the brief. If you put that into the Internet, you get a four-page document. And on that four-page document, what are they citing to? They don't say. They don't repeat the language that they're supposedly relying on. They don't point to any specific language. All they say is the document doesn't say WeConnect. Well, we know the document doesn't say WeConnect, but that doesn't matter because WeConnect is AEI. And more to the point, yes, we could have put more evidence into the record, but the evidence that we put into the record was more than adequate to establish the fact that WeConnect was formerly known as AEI. What else could that language possibly mean? Your evidence, you mean the affidavit from your HR person? That's right. Yes, Your Honor. Why is the HR person supposed to have any particular expertise in understanding the corporate structure and knowing whether it was a name change or whether it was a merger? Well, there's no contention in this case, Your Honor, that the affidavit was inappropriate or improperly found. I'm not saying that. This goes to weight, not admissibility. Well, okay. I suppose we could have had the chairman of the board sign the affidavit. We could have just introduced those documents. We could have if we had known that this was going to become an issue. If you read through the appellant's brief, they do these drive-by issues throughout their brief. For example, they made the argument that Judge Gettleman just made where the document was never signed. Their entire argument in their brief is the agreement was never signed by the employer. Are we then duty-bound to jump on that and construe from that passing comment that we are supposed to draft or research the effect of an unsigned document, that we are supposed to draft it, that we're supposed to introduce evidence which says and explains why the document was never signed? This whole argument, this whole issue goes to those cases cited in our brief which say that an undeveloped argument is a nullity. And that's exactly what we have here. This argument was never developed until the judge got a hold of it, and he looked up the website, and he extracted some language from that website, language which we didn't know he was going to extract or rely upon. He put it in his order, and that became the basis for his ruling, all the while ignoring the evidence in our HR director's affidavit. And it's true that we could have had an officer of the company sign the affidavit, but in the face of the fact that there was no evidence introduced by the plaintiff or the appellee in support of any argument that the two companies were different companies, there's no evidence anywhere in the record that the plaintiff or the appellee ever did this. I think that's the point we're struggling with here. What does formerly known as mean? It could mean so many different things. I don't believe it could, Your Honor. I mean, as we say in our brief, a new bride signs her name Mrs. Jones, formerly known as Miss Smith. Everybody knows what formerly known stands for. When it comes to marriage, yes. When it comes to corporate transactions, not necessarily. But in the face of a complete lack of any contrary evidence, there's just no evidence. We didn't have a very high burden to meet. Even if you don't like the evidence that we introduced, and even if we could have put on more evidence, even if it's just a minuscule little weak piece of evidence, it's still more than the plaintiff appellee offered. And if you're talking about... The website. I'm sorry? The website. The plaintiff offered the website. The plaintiff never cited the website, never introduced it into evidence, never laid any foundation, never explained to us what portion of the website they were relying on or why it was relevant. They never argued even that the fact that the document says one, says AEI, but the defendant is We Connect. They never even explained why that was even relevant. This was a drive-by issue that they threw out into their brief and expected us to do all the work for them. And in hindsight, had I known that the judge, or had we known that the judge was going to latch onto that and do his own research and go out and look at the website, we would have certainly put on a full-blown case. We could have introduced dozens of documents which show that We Connect is just another name for AEI. But I don't believe that my client can be held responsible for the fact that we didn't do more when the plaintiff appellate did literally nothing. You complain because you say the judge went outside the record or whatever and did his own research? Right. Yes, Your Honor. What is it that he found that's different? I mean, I look at your appendix and it talks about there's nothing more here than a change of name. It's not a new corporation. Correct. It's not a preexisting business. Right. Okay, I see all that. So what and I guess I can't find in the appendix where the actual agreement is. Where is that anyway? It's in the first pages of the appendix. The first document there is the order and the second document is the agreement, if I understand. I don't have the numbers in front of me, but I can get them for you. All right, well, I've got it here. What I'm really looking for is what he ever signed as far as, you know, the Lewis case is out of the way now, so it's all a matter of arbitration. Correct. Correct, Your Honor. Well, it would be in this case, but this appeal is of crucial importance because if the district court's ruling is left to stand, then the Lewis case is irrelevant because the court has ruled that the agreement is void and unenforceable. I understand, but I'm just saying that was another issue, whether you even have arbitration in the first place. Right. Yeah, okay. Correct. I know that, but I'm just, I was kind of curious when digging through this because I thought I heard the judge say at one point it was a different corporation. And that's exactly what the court, that's exactly the error that the court made. That's a big error. It's a huge error because it makes all the difference in the world. That's what I'm trying to focus on here. Yes, sir. Let me help you. It's clearly in what this shows, this was nothing more than a name change. That's right. And it's not a preexisting corporation or a preexisting business or something. It's not a merger. It's not an acquisition. That's exactly right, Your Honor. It's simply a name change. Pure and simply, it was a name change. That's what we believe the- Was that enough as far as you're concerned to show this is only a name change and he was wrong in calling it a different business, a different preexisting business? Well, it certainly is enough in light of all of the facts that are now on the record. I mean, it's undisputed that it was a name change. There's still no evidence anywhere except for the misconstrued language from the website. The website doesn't say there was a merger. The website doesn't say that AEI ceased to exist. The website doesn't say that AEI merged with another different company called WeConnect Enterprise Solutions. What it says is AEI combined with WeConnect Enterprise Solutions, and together we're doing great things. What do you say combined with? I don't know what the word combined with means. Well, I don't either. That's why I say when I look at this, it says the document is so clear. It's a chain change. This is the unanimous consent of the Board of Directors resolved shall change the name from Alternative Entertainment to WeConnect. That's right, Your Honor. And I think the concerns raised by Judge Barrett were that that document wasn't introduced into the record until after the judge took it upon himself to pull language out of the website and rely on that, to construe it, first of all, and then to rely on that language, and in meanwhile ignoring the evidence that we had presented that it was just a name change. And then it concluded, the court concluded that based only solely on that language extracted from the website, the court concluded that our evidence was wrong. He says, in fact, it was not just a name change. It was a merger. And the court relied on the language in the website that said the two companies combined, combined their efforts. Well, I don't know what combined means, but I know in this case it doesn't mean merger. Never said merger. Counsel, do you concede, though, that we can't look at those documents because they were not before the district court? No, I don't, because we introduced those records only after we knew what the argument was, what evidence was being used to support the argument. At the time we filed our initial brief, we had no idea that anybody was going to rely on that website language to argue that there was two separate companies and that, therefore, the AEI document was void or could not be enforced by WeConnect. We had no idea, Your Honor, until the judge issued his order on December 28th what we were up against, and that's really the whole crux of this appeal. So do you think that the judge had the discretion at that point to open the record, in a sense? He could have. Look at your new evidence? I wish he would have invited us or given us an opportunity to come in and address the evidence. But, in fact, we filed a motion to reconsider, which was designed to do exactly that. And that's a discretionary call. It is, of course. So are you basically arguing an abuse of discretion? No, because under Rule 201 of the evidentiary rules, if the judge is going to take judicial notice of a fact, he has to give the parties a chance to articulate and explain and have a say in that. He not only didn't give us a say before he ruled, but after we asked him to reconsider and give us a say, he refused to consider our evidence. He just said, you should have figured out what was going to happen. Well, I don't want to mischaracterize what the judge said, but he said we should have presented the evidence in our initial briefs, even though we had no way of knowing what evidence was going to be relied on to formulate the argument. We didn't even know what the argument was going to be. Thank you, Counselor. Thank you. Ms. Madden? Thank you, Your Honors. May it please the Court, my name is Caitlin Madden, and I represent the appellee, Brooke Scotland. And this case, it's important to consider what the burden was held by WeConnect when it filed its 12B3 motion to dismiss Mr. Goplin's class action wage complaint and attempt to compel arbitration. Judge Peterson correctly followed the proper 12B3 standard in which the defendant bears the burden to demonstrate that their motion is appropriate, and if there are factual disputes, those should be resolved in favor of the non-moving party, as well as drawing all inferences in favor of the non-moving party. It's also important to consider what the record was before Judge Peterson when he was ruling on WeConnect's motion. He had the agreement, which is on page 11 of the record, which doesn't mention WeConnect. It doesn't mention successors. It doesn't mention its signs. It just says this is an agreement between AEI and Mr. Goplin, not signed by AEI, and he had the phrase in the HRVP's declaration. So who was your client employed by at that moment? He was only employed by WeConnect. He started working for the company in February of 2017, at which point there was no AEI. So if he was employed by WeConnect and signed a document that had AEI on it, isn't he agreeing that AEI and WeConnect are the same? I disagree that he is. He received this document with other documents that employees tend to get at the beginning of employment, frankly didn't recall that he had seen this agreement and never worked for AEI, didn't know of the business. He worked for WeConnect. So that was one of the things that plaintiffs brought up when responding to defendants' motion seeking to dismiss this complaint and compel arbitration. And WeConnect argues that it lacked any notice of this name change argument, and we certainly dispute that that's the case. As counsel noted, it was cited multiple times in our responsive brief. What was cited? That WeConnect is not mentioned anywhere in this agreement. And, again, coming back to the standard on the 12B3 motion, it was WeConnect's burden to show that they could enforce this agreement that they drafted, that they required their employees to sign, and that they are now seeking to enforce. And so Judge Peterson had only this agreement and this phrase in a declaration stating that WeConnect was formerly known as AEI. Plaintiffs, in responding to that motion, are certainly not required to raise every possible argument that defendant could have raised and then respond to it, which seems to be the suggestion, that we should have flagged some of these additional arguments for the purpose of refuting them. Well, only if the judge made a mistake. I think that's really what they're talking about, and that's what I'm curious about. I mean, do you agree that, I guess you agree, that WeConnect is simply a name change? We don't dispute that point, but I do dispute whether the judge made a mistake. Because, again, Well, I think he, I may be wrong, but I thought he called, I don't know what this was in the email that said something about combined. Correct.  So at the point when plaintiffs filed our responsive brief, no discovery had been conducted. So one of the things we cited to in our responsive brief was WeConnect's own website because that is the company speaking for itself, and in the website is a line stating that AEI and another company, WeConnect Enterprise Solutions, combined to form a new company. Judge Peterson did include that line in his initial ruling in December of 2017, but it wasn't dispositive of the decision that he made, and I think that this court's precedent in Roe v. Gibson is informative to the use of the website. In Roe, this court looked to some Internet research not to draw its own conclusions or conduct its own research, but to confirm a disputed fact and confirm facts that had already been placed at issue by the plaintiff in that case. Well, this is kind of a statement by a party opponent. I mean, this isn't because it was WeConnect's own website. It's not like just hitting Google and going to find a document on your own. And that is why we cited to the website because it's the party speaking for itself. Again, we didn't have the opportunity to depose Mr. LeClew. We didn't have these additional documents that were in the possession of WeConnect, and again, it was their burden to demonstrate this. Hazel, let me ask you something. So looking at the corporate documents that they filed too late, it does seem like this was just a name change, that it wasn't a merger. So had they introduced those documents earlier, you would have lost, it seems to me. So it seems to me like this whole thing hinges on the soundness, our saying the judge was within his discretion to not reconsider once they brought the corporate documents showing that it had been just a name change and not a merger. Do you agree with that? I do, with one caveat that I will get to. First, I agree that that information shouldn't be considered because, again, under this court's precedent, in a motion for reconsideration, they can be filed to correct a manifest error or to present newly discovered evidence. None of this evidence was new, and this court's been clear on a motion for reconsideration that's not a do-over. But what about manifest error? Come again? What about manifest error? Again, even if it's manifest error, they can't present evidence that was available to them and could have been presented previously. And I know that WeConnect alleges they had no notice of this argument, and that's the reason for not presenting the evidence, but to that I'd respond first they bore the burden to demonstrate that an agreement that didn't name them could still be enforced by WeConnect and that they did have notice because we raised the name change issue multiple times in our brief as well as citing to their own website. And the caveat I set aside was an additional argument that we raised in our responsive brief not before the court today. Besides the EPIC systems issue, we also raised an unconscionability argument. So I would ask that if this court reverses, that this be remanded for the district court to consider our unconscionability arguments opposing this arbitration agreement. There are other issues with it aside from the name change that we allege make it unenforceable. All we would do is address the issue that was addressed by the district court. When I asked you originally who your client was employed by, you said WeConnect. Correct. On appendix A6, page 6 of the district court's opinion, the district court found that the only reasonable inferences to draw from the agreement is that the employer is AEI. So are you disagreeing with that conclusion by the district judge? No. With respect, I believe when the court said the only reasonable conclusion is that the employer is AEI, they're referring to the language of the arbitration agreement. So looking within the four corners of that contract, which talks about the claims that the signatory is agreeing to bring in arbitration, the only reasonable conclusion is that the employer referred to by that agreement is AEI. But then it goes out to talk about WeConnect perhaps being a third-party beneficiary. So it's more than just that. And I believe that was the judge attempting to understand WeConnect's argument because WeConnect didn't develop this name change argument, didn't present any information beyond a sentence in the declaration, to demonstrate that it could enforce this agreement. And so looking to understand why WeConnect would be enforcing an agreement that didn't name it as an employer or as a party at all. I think you got it right at the end of your brief by saying that this was sloppily handled by everybody. Potentially so, and I think that the central point, though, is that the judge dealt with the evidence he had, and he applied the correct standard when he did so by drawing all inferences and resolving all disputes in favor of the non-moving party. So given the evidence that he had, the decision that he made was appropriate. So many of these documents go through here, and he signed several on 3-2-2017, right? Correct. And just this one here, Alternative Entertainment, Inc., Open Door Policy Arbitration Program. I acknowledge that I have read, et cetera, et cetera, signed your client. And it's right in there, Alternative Entertainment, Inc. Yeah, and the judge notes it's pretty sloppy. It's weird that this thing is just full. You know, the student, or men's side student, but the employee handbook, it's all AEI. Everything is, and I assume anybody that signed this before this change of name who signed any of these kind of documents, I assume all those are enforceable, right? Well, that would be, I think, a separate argument. Well, I know, but I'm not asking you to make a separate argument, but if somebody signed this six months earlier or whenever, the same kind of agreement to arbitrate, were all these things supposed to be re-signed, et cetera, when they changed the name? I think that would be appropriate if AEI is no longer in business. Well, that might be a good idea, I do think of it now, but I'm just wondering as far as being enforceable and what one signs when you look at what the document says and what someone's on a new job and signs all these other things, agreeing, it's a good job. I don't know what the dispute is about what they want to arbitrate and all that. We haven't gotten there, but that seems to be the whole issue. Arbitration was a challenge at first, but now that's resolved, so now it's whether or not he's bound by that document that he signed. It's just everything. It's sloppy, all right, if it didn't bother to tell everybody, hey, incidentally, we're going by a different name here. I assume the paycheck that he got said, didn't say AEI. Correct, his paychecks all said we. So everybody all of a sudden, when they get their paycheck, they say, oh, gee, who's this? I don't think so, but anyway, that's where we are. Thank you, counsel. Mr. Townsend, I'll give you 30 seconds for rebuttal. Thank you, Your Honor. Your Honor, the website was not only dispositive of the court's decision, it was the only evidence upon which the court relied. The website evidence that the court found and said that the two companies combined, that's the only factual evidence you will find anywhere in the record to support the court's conclusion that the two companies were distinct entities. The other point is that he was employed by AEI because AEI is WeConnect, and to Judge Mannion's point, there's numerous documents in the record which demonstrate and prove that Mr. Goplin signed numerous documents at the time of his hiring, all of which said AEI. In fact, in this case, in documents that are in the record, Mr. Goplin's own counsel relied on AEI documents to demonstrate to support their motion for preliminary certification. Those documents are cited in our briefs as well. Thank you, counsel. The case is taken under advisement. That's all we have for today. Thank you. Thank you.